Good morning, your honors. May it please the court, my name is Brian O'Ryan, counsel for the appellants. I'd like to reserve 5 minutes for rebuttal, please. Below the district court dismissed appellant's complaint for failure to comply with the Clean Water Act's pre-suit notice requirements. In this appeal, EPA argues for affirmance on an alternative theory that was specifically rejected by the district court. Although the district court dismissed the complaint, it rejected the theory advanced by EPA in this appeal. In so doing, the district court applied this court's well settled precedent on pre-suit notice requirements. This court should likewise reject EPA's arguments. The notice here was adequate under this court's precedent. A useful starting point is this court's decision in Klamath-Siskiyou Wildlands. In that case, this court surveyed 3 prior decisions of this court. In so doing, that court made clear the following key legal rules. First, the adequacy of pre-suit notice is considered in light of the purpose of the notice process. Second, the notice letter fulfills the purpose of the notice process if it provides sufficient information for the alleged violator to identify and attempt to correct the violations, thus avoiding the need for a citizen suit. Lastly, in considering these questions, the court will take into account the defendant's knowledge of its own operations and activities and the relative access to information between the parties. You know, one thing, when I read this statute, the statute doesn't say that the EPA is to publish a list of water quality standards. It just says it's supposed to publish information, right? That's correct, yeah. It's, if you look at the way EPA has published this information in the past, it's in the record. There's a 1978 report. Right. And it includes extensive tables containing water quality standards information, as well as an extraction of the pollutants. The statute also says it has to...  So couldn't EPA, in light of all the technological changes that have taken place, just post that information on their website? It's not a question as to whether or not the notice was adequate on that. That goes to the merits of whether or not EPA complied with the statutory duty through the website. That goes to the merits, but for purposes of the appeal... Doesn't that suggest the notice was inadequate because you guys thought the list was this 1978, 1982 list that EPA created, and that was inadequate. EPA was thinking it's the website. So you guys were on different, you know, just on different pages here. So that suggests that maybe the notice wasn't specific enough of what's wrong, such that you guys were looking at different documents, different sources, and each side's kind of scratching their head because you guys look at the 1978, 1982 list and say, gosh, this hasn't been updated in decades. EPA's looking at their website and says, wow, we have a wealth of information. It seems like the notice provided a little more data, everyone would have been on the same page, just as a practical matter. First, well, EPA concedes the notice letter did not need to identify EPA's own website for EPA to understand where to look to find its list. So for purposes of the notice process, the intent of the notice process to permit the alleged violator to identify and attempt to correct the violation, EPA being able to, regardless of what appellants subjectively believed, EPA knew where to find its list. All it had to do was check its own list, compare that list with the water quality standard information that it has, see if there were any gaps, and update the list. And then on that point, again, that website has so much information. It has charts, these links, multiple layers. The notice just says it's inadequate, incomplete. I mean, you don't have to do all the heavy lifting for the EPA, that's their duty. But on the other hand, it seems like the notice should have provided a little bit more information of what's missing. Hey, this is, for example, this is missing, this is inadequate. It just seems like just saying it's incomplete or inadequate basically means that you're violating the law. And again, the point of- I'm sorry, I don't mean to interrupt. I'm done, go ahead. The hard part about this case to me is that our Children's Earth Foundation asked for what they believed was to be the information required under this particular section of the statute. And they thought it would be in the form that it had previously taken. And instead of just saying, no, we've changed how we do this, it's now on the website. We have all this litigation about whether the notice was that adequate. And it seems to me that if any party knew how they were publishing this information now, it was the EPA. And they could have just responded simply instead of creating this lawsuit by telling them, no, it's the website. And then OCE could have simply gone through the website and said, well, this is why it's inadequate because apparently it's not been updated and isn't covering all the places it's supposed to be covering. And in fact, they have done some more work on it now since this lawsuit was filed. But I don't know if this is really a question of whether the notice was adequate or inadequate. It's more that the only party who could have understood what the responsive documents were is the EPA. And they could have just told OCE, look at the website. The list is there. That's exactly right, Your Honor. It would have been impossible for anyone outside of EPA to have identified the website at the time that the notice letter was issued. The website does not identify itself as a Section 304A list. It does not say that anywhere on the website. It doesn't resemble anything like- The statute doesn't say it's supposed to be identified as a list. It's just supposed to provide information. The purpose of Section 304A, excuse me, 304A6 was to inform the regulated community about the ineffect water quality standards so that the regulated community and members of the public could identify those water quality standards. If EPA was publishing a website which has a disclaimer across every page saying, EPA's only made a reasonable attempt to ensure its accuracy, that doesn't communicate to the public this is an authoritative list. Congress wouldn't have gone through the process and bothered to pass federal legislation telling EPA to do this if it meant for EPA to just be able to disclaim the accuracy of what it published. To take up Judge Wardlaw's point, it seems like, you know, let's say you wanted to know the water quality standards in, I don't know, here in the city, San Francisco, that EPA has made known. So you go to their, I guess you go to their website and it has a little, maybe it has a find, you know, find with a magnifying glass, find. You type in water quality standards of San Francisco, I gather you might get something, right? Yes, you will get something. You will get information through the website. About the water quality standards. Oh, yes. Okay, and let's say that what's there is 10 years old. So why wouldn't, and maybe you check a few other places, it's outdated. So then as Judge Lee said, it seems like what the notice should have been is, hey, the information on water quality standards under the statute is inaccurate and incomplete. That's exactly what the notice that are asserted. No, on the website. There was no way for anybody outside of EPA to refer to the website. There would have been no reason. The information, the notice was to allege violations of the statute. And the website itself doesn't communicate in any way that it is a website that is informing the public pursuant to that duty. And it doesn't resemble in any way the published reports that were formal EPA reports that it had published in the past. Moreover, it doesn't include the extraction. I mean, it doesn't resemble it in many ways. Well, let me, I'm gonna say one last thing on this, and that is that I don't consider myself at all an expert on the internet. But a lot of people usually think, well, let's go to the website and let's just check. And in your organization, I'm sure people do that. And that goes to the merits of whether or not EPA has complied with its duty through the website. It does not go to the issue presented in this appeal. That issue is solely whether EPA understood the notice letter and could have avoided litigation through bringing itself into compliance with the statute. And that is a key case. The key case I would point this Court to, two key cases that are closely analogous. San Francisco Baykeeper versus Tosco Corp. is the first. It's a Clean Water Act case. The notice regulation I issued there required the notice to include dates of violation. It's very analogous to what EPA is alleging here with respect to specific water quality standards not being identified as missing from the list. The notice letter in that case alleged two types of violations. For one violation, it listed dates for some but not all of the violations. For the other type, it listed no dates of violation at all, including a narrative description of what the alleged defendant had done wrong. In that case, the narrative was, on windy days, you're allowing piles of dust, coke, to be blown into the sluice. That's it, no dates. The Court held that was adequate. Why? Because the purpose of the notice letter process was satisfied. The alleged violator could piece together from the information in the notice letter and its knowledge of its own operations, both what it had done wrong at a general level in nature of the problem that the notice letter was relating to and how to correct the violation. So that goes to kind of the second issue of whether or not the notice letter needed to list examples of the water quality standards that were missing. The other key case, I'll just note for the record, if the Court would like, Water Keepers v. AG Industries Manufacturing. I do have another question. I think the District Court said, why don't you just refile? So when the District Court tossed out the case, they tossed it out on a jurisdictional basis. So that's not a ruling on the merits at all. I mean, I gather you could just give another notice, sue them again. Is that right? Your Honor, we may very well be able to do that, Your Honor, but it's just simply, the District Court's rationale just does not comport with this Court's precedent. There's no reason for us to go through the process of refiling this case. EPA's assertion about the website. It seems like it might have been a little easier than doing a Ninth Circuit brief and waiting. It may well have been. Just to honor the issue, the whole, go ahead, I'm sorry, Judge Wardlaw. Well, I was just gonna point, I mean, the District Court dismissed the case without prejudice. I mean, you could have even just, I don't know, without prejudice, you're bringing another action. Now that you know it's the website, is what they considered the 304 compliance item. And you also know that it's not accurate, given that they guessed where you were from and checked California and found many inaccuracies and had to update it. I think it'd be fairly easy to reformulate the list, the notice. Your Honor, it's just not required by this Court's precedent, and it would be, it'd be highly ironic for EPA to rely on the fact that it has failed to undertake its mandatory duty, publish a list that identifies itself at a minimum, that's a listen question, and then be able to dismiss a citizen sued. Did you want to save some time? I'm pointing my finger at the clock. Yes, Your Honor. Thank you. Good morning. May it please the Court. I'm Kevin McCardle on behalf of the Environmental Protection Agency. The plaintiff's notice was deficient and defeated the purpose of the statutory notice requirement for three reasons. First, it didn't identify the, quote, last published list that was the subject of the grievance, as the district court correctly held. Second, it didn't provide any information, either in narrative form, by way of example or otherwise, why the plaintiff's believed the unidentified list was outdated or incomplete. And third, it most definitely didn't put EPA on notice as to the deficiencies in the website that were first alleged in the amended complaint. Any one of those deficiencies justifies the district court's dismissal, and for that reason, the court's judgment should be affirmed. Now, the first point, they had to tell us what they thought was the last published list, just as the subject of their grievance, just as the district court correctly held. And we never conceded otherwise. We made that point on pages one through two of our brief, page nine, 15, 16, 18, 26, 27, 35, 36 through 37, and 38. That's a key point, because- Counsel, may I ask you a question on that point? How would they identify the last list if you didn't put Rule 304 information on the website or on any subsequent lists following the 78 list? How would they know which one was the last? Well, that's why it's so critically important, Your Honor, for them to identify what they thought was the list. So, for example, they say on page 17 of their reply brief, they come clean and they say, we thought then, and we think now, that the last published list was two reports issued in 1978 and 82. Why they didn't put that in their notice, no one knows. If they had, we could have resolved the grievance in a two-sentence email by saying, you're looking at the wrong thing. We don't rely on those 40-year-old documents. We use the website. And the second point is, they sent a FOIA request seven days after, I believe, they sent the notice. And it said, give us everything you've issued in part one of their request. This is SCR 13, I believe. Give us everything you've issued under Section 304A6. And in response, we said, the website contains the information requested. So at that point, the proper course of action would have been, take a look at the website. If you think it's deficient in some way, send us an updated notice and we'll take a look and see if we need to change it. But you can't just go file a lawsuit based on a vague letter that, you know, vaguely referencing reports issued 50 years ago and then move the goalposts and say, now we're gonna amend our complaint and challenge the website. They had an opportunity right then when we told them that the website contains the information to send us a notice. Is there anything in the record that shows any interaction between EPA's FOIA unit and the litigation unit that addresses the pre-suit notice? I don't think there is, Your Honor. Everything on the FOIA request that I'm aware of right now is around SCR 10 to 13. With the exchange I just described, where we said in response to part one of their request that the website contains the information requested. The reason why I'm asking is, they also submitted this FOIA request and the FOIA request, they do mention this 1978, 1982 list, I believe. And if there's interaction between the two, maybe the EPA unit that handles pre-suit notices would have been put on notice that they're thinking of the 78, you know, 82 list. Yeah, I think it was only a FOIA matter at that point because the notice was sent to a different component. It was sent to the EPA administrator. So I don't think, and the FOIA request came in only seven days later after the notice was sent, I believe. Or it may have been, I apologize. I think it was the FOIA request was sent first, then seven days later they sent the notice before we responded to the FOIA request. And that's outlined in our brief as well. And the second major deficiency is that they didn't tell us, as I said, what the problem was with the unidentified list. They said it's outdated or flawed, but they didn't provide any information explaining why. And instead they say, well, you know, EPA, you could go figure it out. You know, it's your list. You could figure out what's wrong. But that's not sufficient, and no court has ever said that an agency's control over its own subject matter discharges the plaintiff from describing its notice with reasonable specificity. And I think the cases counsel mentioned are really helpful, like Tosco Corp. I mean, there the plaintiff said, that's the case that involved the Coke storage facility. And the plaintiff's notice said, look, you're violating the Clean Water Act in two ways. First, when you load Coke onto boats, it spills into a slough and flows into San Francisco Bay. And we talked to the Coast Guard. They indicated that you've been engaged in loading on these dates. And then they added a few more dates in their complaint. And then they said, you're also violating the Clean Water Act because you store Coke on uncovered piles, and when the wind blows, it blows into the slough, flows into San Francisco Bay. So that gave the target a lot of specificity about what it was doing wrong and how to take corrective action, cover up the piles. Now, compare that to the notice here, which has a few sentences on page ER-59 that purport to describe the factual basis for the claim. It says, your last published list is outdated and incomplete, which is worse than having no list at all, period. That's not even remotely comparable to the level of detail provided in Tosco Corp. and Klamath-Siskiyou. So those are additional reasons why the notice was deficient. But the district court was absolutely correct in holding that it was deficient because the plaintiffs didn't identify the subject list that they believed was deficient, because that's an essential piece of information that we needed to know in order to address their grievance, which is the whole point of the notice requirement. So let me ask you this. If somebody was just, you know, randomly concerned for whatever reason about water quality standards, and they said, hmm, maybe I should go to the EPA's website. Maybe they'll have some information. Is there like a listing, a notice, or any kind of statement on the website that the section, what is it, 1314? Is that the one that requires the information? 1314, I believe. Yeah, that information can be found here if you just click a button. Or do you have to use, you know, like I said, you get on a website and they usually have a find inquiry and you have to punch in a water quality standard. What would one see? Or how would one get the information? Right, okay, well, the statute says publish information about the water quality standards in effect. If you do a Google search that says water quality standards in effect under the Clean Water Act, the first thing that comes up is the website. If you look at the website, it has a menu of the United States and you can click on each state and it takes you to that state where the water quality standards are reproduced. Now, there's nothing in there that's specific that says this is specific to 304A6, 1314A6. It says this is being provided as a convenience to users, but that's all users because water quality standards serve many different purposes. But the point is that if you're interested in figuring out what water quality standards are in effect in a particular state, you would get to this website immediately by doing a Google search and then you can click on the appropriate state. And if you think something's missing, you can send us a notice and then we'll try to correct it just as we did when plaintiffs finally divulged that the basis that their claim was focused on California and Hawaii. That was the first time we actually got some facts about their claim. And we went and we took corrective action. And as the district court said, that's the entire point of this notice requirement. But they had to provide that information in the notice, not for the first time in the complaint. And it didn't even contain that level of detail. The most basic fact that the focus of their complaint was California. So there's no question that this notice was deficient. And for that reason, the district court's judgment should be affirmed. The last thing I'll say is, yes, they can send a new notice and file a new complaint. I mean, but they have to, if they want to challenge the website, they have to send us a notice first, detailing the deficiency with reasonable specificity so that we can try to correct it in the 60 day waiting period. That's the point. Does the statute require current information or? Well, it says we have to publish and revise as appropriate. And so water quality standards from the state are modified, updated periodically. And when they are, we update the website. Unless the court has any further questions, the district court's dismissal should be affirmed. Okay, thank you. You had a few minutes, counsel. Thank you, your honors. In response to your honor's question about the record, whether or not the FOIA request contains a reference to the 1978 and 1982 lists, it does. So supplemental excerpts of record 10 is a copy of the FOIA request. It explicitly identifies, it says, note we are aware of such lists published in 1978 and 1982. This is in the FOIA request. And even provides the title. In addition, in supplemental excerpts of record 12 is email correspondence between counsel for appellants and the FOIA officers, which once again refers to EPA's 1978 list. So that is in the record. The statute does require current information, your honor. The statute requires EPA to annually publish the list. So it does have a duty to essentially maintain a current set of water quality standards on at least an annual basis. Counsel for EPA said, referred to the California situation. And that once they were made aware of California, all of a sudden they were able to find seven missing water quality standards for the California webpage. There's no reason that EPA needed our Children's Earth Foundation to tell them what was missing from their website. It's EPA's duty to do that under the statute. There's no reason they had to wait for that level of specificity in the notice letter to fulfill the basic purpose of the notice statute. It needed two pieces of information, both of which it had, it's undisputed that they had this. The list and the water quality standards. The states have to submit water quality standards to EPA. EPA has a statutory duty to review and approve them or reject them within a set time period. So this is not information that goes into a black hole. This is reviewed, compiled, monitored. Water quality standards are a core input to major programs on the Clean Water Act. So this is not just sort of a random set of information. EPA knows where to find this information. It just simply chose not to do that investigation. And I don't know why it didn't do so here. Lastly, nine seconds. We didn't need to send a new notice letter after the FOIA exchange. That would have served no meaningful purpose here. For purposes of notice letter, it would have just elevated form over substance. And I'll run out of time, Your Honor. Thank you very much. Thank you very much, counsel. We appreciate your arguments this morning. And that concludes our calendar for today. So we will be in recess until tomorrow. Thank you all very much. All rise.
judges: WARDLAW, PAEZ, LEE